STATE of Iowa, Appellee,

v.

Harvey W. BONE, Appellant.

No. 86–1760.

Supreme Court of Iowa.

Sept. 21, 1988.

As Corrected Oct. 17, 1988.
Rehearing Denied Nov. 18, 1988.

Philip F. Miller, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., and Willard Olesen, Co. Atty., for appellee.

Considered by MCGIVERIN, C.J., and SCHULTZ, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

In this appeal from defendant's convictions for burglary, theft and possession of burglar's tools, the question is whether the trial court properly submitted a "flight instruction" to the jury. The court of appeals split 3–2 on the question, reversing the trial court and remanding for new trial. On further review from that decision, we agree with the court of appeals' analysis of why such an instruction ought *not* to be given, but disagree with its decision that to do so in this case so prejudiced the defendant as to require a new trial. Accordingly, we vacate the court of appeals decision and affirm the district court.

From the evidence at trial, the jury could have found the following facts. On a cold Sunday night in December 1985, an Adair County deputy sheriff observed a 1978 Buick traveling well in excess of the speed limit on Highway 25. The officer gave chase, with red lights flashing, and the Buick proceeded to accelerate at speeds up to 105 m.p.h. After ten miles, the Buick went out of control, crashing through a ditch and fence and landing in the middle of a beanfield, 150 yards from the road.

When the deputy approached the disabled vehicle, he noticed two sets of footprints in the snow leading from the driver's side door. Opening the car's unlocked door, the officer observed a pair of bolt cutters, a metal prybar, and a police radio scanner. The scanner, later determined to be stolen, was tuned to a frequency used by law enforcement officers. The deputy also noted that the ignition key was still in the lock on the steering column, turned to the "on" position. Because the ignition lock was broken, the deputy believed the car might be stolen.

With the help of other officers who had arrived on the scene, a search for the Buick's occupants ensued. The footprints in the snow forked about 100 feet from the car. One set of tracks led to a man named Paul Caldwell who was lying down in a nearby field. He described himself as a hitchhiker who was picked up by the driver of the Buick and then held hostage at gun point when the car chase began. He claimed to have fled the crashed vehicle in fear for his life.

The other set of footprints led to defendant Harvey Bone hiding behind a storage shed at a nearby gas station. He admitted driving the Buick and said he fled because he had no valid driver's license. Upon searching him, the officers found that he carried nearly $22 in change and a "large amount" of $20 bills. Curiously, Caldwell claimed not to recognize Bone.

Both men were taken into custody and Bone's vehicle impounded. An inventory search of the vehicle revealed gloves, a ski mask, slip-joint pliers and wire connectors in addition to the bolt cutters, prybar and scanner previously mentioned. Both men were charged with possession of burglar's tools in violation of Iowa Code section 713.7 (1985).

The next morning, the sheriff was notified of two burglaries committed the night before in Orient, Iowa, just south of Greenfield on Highway 25. In both cases, entry was gained by force. A co-op's doorknob was twisted open with pliers; a hardware store's door had been pried open. The stores' owners reported items stolen from inventory and one reported $17 in missing coins.

This report led the sheriff to believe the trunk of the impounded Buick contained the stolen items. After obtaining a search warrant, police officers found more tools (hammers, chisels, screwdrivers, two prybars and a crowbar) along with all the items taken from the burglaries of the two Orient businesses. Bone and Caldwell were then charged with two counts each of burglary and theft. *See* Iowa Code §§ 713.5, 714.1(1), .2(2) (1985).

The jury found Bone guilty as charged. On appeal from judgment and sentence entered upon these convictions, Bone assigns a variety of errors. All have been considered by the court of appeals, and now by this court on further review. Like the court of appeals, however, we find merit only in Bone's challenge to the court's instruction on flight.

I. Over defendant's objection that it would be an improper comment on the evidence, the district court gave the following flight instruction, patterned after Iowa Uniform Criminal Jury Instruction No. 214:

> If you find the offenses charged were committed, and that the defendants thereafter fled from the scene of the crime for the purpose of avoiding or retarding prosecution, then such flight is a circumstance you may consider in determining the guilt or innocence of the defendants.
>
> The credit and weight, if any, to be given such circumstances is for the jury to determine from a consideration of all the evidence in the case.

This is not the first time in recent years that we have considered the propriety of such an instruction. As recently as 1986, we cautioned against its use. *See State v. Marsh,* 392 N.W.2d 132, 134 (Iowa 1986).

In *Marsh* we premised our disapproval on the general rule that courts should avoid commenting upon or drawing attention to specific evidence and we catalogued those jurisdictions that have questioned the use of flight instructions or disapproved their use altogether. *See id.* at 133. No purpose would be served by repeating that authority here. We are convinced that the criticism has continuing validity.

Nevertheless, in *Marsh* we upheld the defendant's conviction because we found that the instruction given "was a correct statement of law and left any inferences to be drawn from defendant's flight up to the jury as they considered all the evidence." *Marsh,* 392 N.W.2d at 134. Notably, the unusual facts of *Marsh* included an eyewitness to the attempted burglary who personally observed not only the crime in progress, but Marsh's flight from the scene in direct response to the appearance of an investigating squad car.

It is this latter piece of evidence, tying the flight to the commission of the crime, that is so often missing in criminal prosecutions. Without it, a person's departure from the area where a crime has allegedly taken place is of marginal probative value as circumstantial evidence of that person's guilt. As one court has aptly observed:

> For departure to take on the legal significance of flight, there must be other circumstances present and unexplained which, together with the departure, reasonably justify an inference that it was done with a consciousness of guilt and in an effort to avoid apprehension or prosecution based on that guilt.

*State v. Wrenn,* 99 Idaho 506, 508, 584 P.2d 1231, 1233 (1978).

We alluded to this secondary, but nonetheless significant criticism of flight instructions in *Marsh,* but avoided addressing the probative value question directly because of the unique fact situation presented. *See Marsh,* 392 N.W.2d at 134, n. 1. Here, however, we must squarely address the question because there was no evidence, except by virtue of hindsight, connecting the high speed chase to the crimes charged.

Our concern in this regard stems from the general rule that a trial court's instructions must have support in the record. *See, e.g., State v. Jenkins,* 412 N.W.2d 174, 177 (Iowa 1987); *State v. Burt,* 249 N.W.2d 651, 655 (Iowa 1977); *Collegiate Mfg. Co. v. McDowell's Agency Co.,* 200 N.W.2d 854, 858 (Iowa 1972). In the chase detailed in the record before us, the pursuing officer was unaware that any crime had been committed, but for the speeding violation occurring before his eyes. The vehicle's occupants were not then suspects in any crime. Any inference of guilt to be drawn from their behavior could only logically relate to their avoidance of a traffic citation. On that question their elusive behavior would be highly relevant. But as to evidence of guilt bearing on the unreported crimes of theft and burglary, the chase raises only suspicion and conjecture.

Given this potential unreliability of flight evidence, the federal courts have taken an approach to flight instruction we think worthy of our consideration. The approach is exemplified by the case of *United States v. White,* 488 F.2d 660 (8th Cir.1973) in which a defendant fled from federal agents attempting to arrest him for a crime allegedly committed five months earlier. The instruction given by the trial court, and challenged by the defendant on appeal, follows:

> The intentional flight or concealment of a defendant immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not of course, sufficient in itself to establish his guilt; but is a fact which, if proved, may be considered by the jury in the light of all other evidence in the case, in determining guilt or innocence. Whether or not evidence of flight or concealment shows a consciousness of guilt, and the significance to be attached to any such evidence, are matters for determination by the jury.
>
> In your consideration of the evidence of flight you should consider that there may be reasons for this which are fully consistent with innocence.

*White,* 488 F.2d at 661–62, n. 2.

We note preliminarily that the instruction challenged in *White* not only left the inferences to be drawn from flight within the province of the jury, it cloaked the court with impartiality by cautioning that the fact of flight may be "fully consistent with innocence." This effort at balancing the opposing views of the litigants would, we think, substantially improve our own uniform instruction number 214.

Despite the basic fairness of the instruction as an accurate and balanced statement of the law, however, the Eighth Circuit Court of Appeals found it was error to give such an instruction under the circumstances of the *White* case, for reasons we find persuasive here:

> If the inference is to have any validity as an indication of guilt, the trial court should assure itself that some evidence exists regarding an accusation of the specific crime charged before instructing the jury that flight may be considered in its determination of guilt. [Where] it is undisputed that the defendant was not advised of the crime he is now charged with at the time of his flight, ... and there is no indication that defendant knew at the time of his flight that he was being sought for the crime charged, we do not think the jury could properly draw an inference of guilt from defendant's flight.

*White,* 488 F.2d at 662 (citations omitted).

■ Applying this logic to the case before us, we conclude that the flight instruction was improvidently given. The record is devoid of any evidence that Bone, or the pursuing officer, knew at the time of flight that Bone was being sought for the crimes charged.

■ In summary, we reiterate our repeated admonition that flight instructions are "rarely advisable" because they amount to an unnecessary comment by the trial court on the evidence. *See Marsh,* 392 N.W.2d at 134. Moreover, we now expand this admonition: Unless some evidence exists at the time of flight regarding an accusation of the specific crime charged, and the defendant's flight is shown to be prompted by an awareness of that accusa-

tion and an effort to avoid apprehension or prosecution, it will be error to give a flight instruction. Finally, any such flight instruction should include the caveat that there may be reasons for the flight (or concealment) which are fully consistent with innocence.

II. For the reasons discussed above, we agree with the court of appeals that the trial court erred in giving a flight instruction in the case before us. We are unable to agree, however, with the conclusion that the error requires a new trial.

■ An error in instructing a jury "does not necessitate reversal unless it is prejudicial." *State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1984). We have stated "[e]rror in instructing the jury is presumed prejudicial unless the contrary appears beyond a reasonable doubt from a review of the whole case." *State v. Davis*, 228 N.W.2d 67, 73 (Iowa 1975). Nevertheless, under the case before us, the fact of flight had been so highlighted by both the state and the defendant that the challenged instruction did not add to the emphasis placed on this evidence. Given this uncontradicted flight evidence, the erroneous instruction can only be viewed as superfluous, not prejudicial to the outcome of the case. *See Rose v. Clark*, 478 U.S. 570, 580, 106 S.Ct. 3101, 3108, 92 L.Ed.2d 460, 470 (1986).

*Seiler* is instructive in this regard. *Seiler* involved a felony murder instruction that merely specified burglary as the necessary underlying felony, rather than first-degree burglary, which involves the element of violence. There, we found no prejudice to defendant because of the undisputed evidence of violence. *See Seiler*, 341 N.W.2d at 268. Here, the concededly admissible evidence of flight and the inferences to be drawn therefrom were neither enhanced nor diminished by the court's improvident, but relatively balanced, comment upon it. *See Rose*, 478 U.S. at 582 n. 11, 106 S.Ct. at 3108 n. 11, 92 L.Ed.2d at 473 n. 11 ("[h]armless-error analysis addresses a different question: what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome?").

But for specific evidentiary objections we have reviewed and find to be without merit, Bone has presented no objection to the sufficiency of the remaining evidence to convict him. Therefore, no new trial is warranted.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.