STATE of Iowa, Appellee,

v.

**Terry Lee MONK, Jr., Appellant.**

No. 92–508.

Supreme Court of Iowa.

March 23, 1994.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Thomas J. Ferguson, Co. Atty., and Thomas Bower, Asst. Co. Atty., for appellee.

ANDREASEN, Justice.

Terry Lee Monk, Jr., was found guilty by a jury and convicted of sexual abuse in the second degree in violation of Iowa Code section 709.3(3) (1991). Monk appealed. We transferred the case to the court of appeals. On appeal he urged the trial court should have granted his motion for a judgment of acquittal based on insufficiency of the evidence and that the court failed to properly instruct the jury on his theory of defense. The court of appeals affirmed the conviction.

We granted Monk's application for further review. On review we vacate the decision of the court of appeals, reverse the district court judgment, and remand for a new trial.

## I. *Background.*

At trial the State offered evidence that, while at a party, Monk and Jim Barber wrestled Ruben Howard to the floor and Monk then stuck the end of a broomstick in Howard's anus. Approximately one month later the incident was reported to the police and criminal charges were filed against Monk and Barber.

Following application of counsel the court ordered that neither Monk nor the State comment to the jury during opening statements as to whether a sexual motive was required to commit sexual abuse. During trial the court allowed Monk's counsel to ask questions as to whether there was anything "sexual going on" that night.

In support of his motion for a judgment of acquittal, Monk argued that "the touching of a broomstick on an anus did not qualify as sexual contact under the context of this case." He urged there was a lack of any sexual connotation. In response, the State argued that a charge of sexual abuse is a general intent crime and that it was not necessary that the touching be for sexual gratification. Because "the legislature did not intend that the State be required to prove a motive of sexual gratification in order to establish an offense of sexual abuse," the trial court denied the defendant's motion for a judgment of acquittal.

Later the court denied Monk's request to instruct the jury that

the term "sex act" means: any sexual contact between two or more persons ... by use of artificial sexual organs or substitutes therefor in contact with the anus.

The court also denied Monk's request to modify Iowa Uniform Criminal Instruction No. 900.8, which the court proposed to use, to add the word "sexual" before the word "contact." Using the uniform instruction, the court instructed the jury:

"Sex act" means a person's use of an artificial sex organ or a substitute for a sex organ in contact with the anus of another.

The court's marshalling instruction provided:

The State must prove all of the following elements of sexual abuse in the second degree:

1. On or about the 17th day of August, 1991, the defendant performed a sex act with Ruben Howard.

2. The Defendant performed the sex act by force or against the will of Ruben Howard.

3. During the commission of the sexual abuse, the defendant was aided and abetted by one or more persons.

After the jury returned a verdict of guilty, the district court entered a judgment on the verdict and sentenced Monk to be confined for a term not to exceed twenty-five years. Iowa Code §§ 709.3(3), 902.9. We first review the jury instructions.

II. *Jury Instructions.*

■ Monk argues that it was error for the court not to instruct the jury that the definition of a sex act required the State to prove "sexual" contact. It was his defense that the contact with Howard was a result of horseplay; it was not sexual in nature or purpose. Throughout the trial, witnesses were asked about the circumstances surrounding the assault.

■ The court used the language of the uniform instruction defining a sex act. We have been reluctant to disapprove a uniform instruction. *State v. Weaver,* 405 N.W.2d 852, 855 (Iowa 1987). However, if the uni-

form instruction is faulty we will so find. *State v. McMullin,* 421 N.W.2d 517, 518–19 (Iowa 1988).

■ The term "sex act" is defined in Iowa Code section 702.17 as follows:

The term "sex act" ... means any sexual contact between two or more persons by: penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another; contact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 150, 150A, 151, or 152; or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

We find this statutory definition clearly requires sexual contact. If the statutory language is plain and the meaning is clear, the court is not permitted to search for legislative intent beyond the express terms of the statute. *State v. Neary,* 470 N.W.2d 27, 29 (Iowa 1991). This construction is consistent with *In the Interest of J.D.S.,* 436 N.W.2d 342, 349 (Iowa 1989). In *J.D.S.* we examined the circumstances to determine if the contact revealed a sexual purpose. We noted the abuser had licked the victim's bottom as well as inserting his finger in the anus of the victim. *Id.* This construction is also consistent with our opinion, filed this same date, *State v. Pearson,* 514 N.W.2d 452, 455 (Iowa 1994), where we stated:

Not all contact is a "sex act." The contact must be between the specified body parts (or substitutes) and must be *sexual* in nature.

The sexual nature of the contact can be determined from the type of contact and the circumstances surrounding it.

■ Although it is not necessary that the court's definitional instruction contain precisely the language of the statute, the instruction must be a correct statement of the law and the instructions as a whole should adequately and correctly cover the substance of the requested instruction.

*Johnson v. Interstate Power Co.,* 481 N.W.2d 310, 324 (Iowa 1992). Courts have a duty to instruct juries on the law applicable to the facts when there is evidence which supports some material issue. *State v. Freeman,* 267 N.W.2d 69, 70–71 (Iowa 1978). As succinctly stated by the court of appeals,

> [o]rdinarily, a defendant is entitled to have instructions presented relating to any theory of defense for which there is foundation in the evidence if he or she makes a timely request and it sets out a correct declaration of the law.

*State v. Stewart,* 445 N.W.2d 418, 421 (Iowa App.1989).

In most cases the sexual nature of the contact is undisputed. However, in this case there is substantial evidence to support a finding that the contact with Howard was not sexual in nature.

Evidence at trial revealed that at the time of the incident Monk was living in a one bedroom apartment with his girlfriend and her daughter, Jim Barber and his girlfriend, and Howard. All of the individuals were good friends. None of them were employed. They spent much of their time watching television and "playing around."

Monk was twenty years old, mildly retarded, and had a ninth grade education. Howard was eighteen, suffered from a mental disability, and dropped out of school in the ninth grade. Jim Barber, Howard's friend since childhood, was nineteen. There was evidence that teasing, wrestling, and similar horseplay between the male occupants was quite common.

On the night in question, the occupants were having a beer party. At one point Jim Barber began to tickle and wrestle Howard. Jim grabbed Howard's shorts and either tore or cut them off. Howard was not wearing underwear. He then wrestled Howard to the floor and directed Monk to get a broom. Barber's cousin, Tim, returned with the broom, dipped the end of the handle in Vaseline, and handed it to Monk. While Howard was held to the floor, Monk inserted the broom handle into Howard's rectum. Everyone laughed before Howard pushed the broom away and ran to the bathroom crying.

Later that evening the participants apologized to Howard. Approximately two weeks later Howard moved out of the apartment and moved in with Tim Barber and his parents.

Howard testified he had never had any sexual contact with Monk, Jim Barber, or Tim Barber; there was nothing sexual going on the evening of the incident. All other occupants who testified at trial agreed there was no sexual activity involved.

Under this record we conclude it was error not to instruct the jury that a sex act requires sexual contact. Here, the jury was instructed that a sex act meant any contact between specific body· parts or substitutes. Because the jury could have concluded that the incident was not sexual in nature, we find the omission was prejudicial. *See State v. Bone,* 429 N.W.2d 123, 127 (Iowa 1988). The judgment of conviction must be reversed.

### III. *Motion For Judgment Of Acquittal.*

 Before submission to the jury Monk made a timely motion for a judgment of acquittal. Iowa˙ R.Crim.P. 18(8). He urged there was insufficient evidence to support his conviction of sexual abuse because there was no evidence of sexual contact. "When the sufficiency of evidence is challenged, we review the evidence in the light most favorable to the State, assisted by all reasonable inferences." *State v. Dallen,* 452 N.W.2d 398, 399 (Iowa 1990). Substantial evidence means evidence which would convince a jury that the defendant is guilty of the offense beyond a reasonable doubt. *State v. Thornton,* 498 N.W.2d 670, 673 (Iowa 1993). We conclude there was sufficient evidence to submit the criminal charge to the jury. The court did not err in denying the motion. However, we must reverse the conviction and remand for retrial because the court failed to properly instruct the jury.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

TERNUS, Justice (concurring specially).

I concur in the majority opinion but want to add to the discussion concerning Monk's

request for judgment of acquittal. Monk strenuously argues that there is no evidence of "*sexual* contact" because his actions were a prank and not motivated by a desire to arouse or satisfy his sexual desires or those of the other participants. However, sexual motivation is not required in order to establish an offense of sexual abuse. *State v. Pearson,* 514 N.W.2d 452, 456 (Iowa 1994). Where the type of contact or other relevant circumstances show that the contact was sexual in nature, the lack of sexual motivation does not preclude a finding of "sexual contact." *Id.*

In the present case, the jury could find that the contact between Monk and Howard was sexual in nature because of the type of contact that occurred. Arguably, Monk and his friends performed a simulated act of anal intercourse on Howard. Monk could have chased Howard with the broom, swatted at Howard with the broom, or playfully jabbed Howard in the abdomen with the broom. However, Monk chose to insert the broom handle in Howard's rectum. A jury could find that he chose to touch Howard where he did to simulate anal intercourse. That finding by the jury would justify the jury's conclusion that the contact was indeed sexual in nature. The fact that Monk was not sexually aroused by his actions is not dispositive of whether the contact itself was sexual.

NEUMAN, J., joins this special concurrence.

CARTER, Justice (dissenting).

In deciding this case, I would apply the criteria that I suggest in my dissent in *State v. Pearson,* 514 N.W.2d 452 (1994) (filed this date). However, in applying either that test or the majority's criteria in the *Pearson* case, I believe that the defendant was entitled to a directed verdict of acquittal.

SNELL, Justice (dissenting).

I respectfully dissent.

Defendant's motion for judgment of acquittal should have been granted as a matter of law. A "sex act" or "sexual activity" as defined by section 702.17 was not committed

by defendant because there was no sexual contact between him and the victim.

The majority relies on *State v. Pearson,* decided this month, from which I dissented, as authority for its result. In *Pearson,* where no one disputed that sex was involved, the majority found that because the act was sexual in nature, contact occurred. A gratuitous statement of law was then adopted, although completely extraneous to the facts of the case and without any supporting authority, that a sexual motivation is not necessary for a sex act to occur. Thus, the aura of sex controls the meaning of "contact" and causes motivation to disappear.

In the instant case, the antithesis of *Pearson,* it is undisputed that sex is not involved. Nevertheless, a sexual abuse is held to be possible because under *Pearson,* a sexual motivation is not required. The unfounded dicta of *Pearson* is now bootstrapped into a holding of law that decides the instant case.

The holdings in *State v. Pearson* and *State v. Monk* have transformed our sex abuse statutes into general assault statutes where the assault has some effect on the reproductive or excretory organs of the victim or defendant. I believe these constructions of our statutes are unwise and go well beyond any recognizable legislative intent to protect victims against sex abuse.