# In the Iowa Supreme Court

No. 23–1375

Submitted April 16, 2025—Filed May 16, 2025

**State of Iowa,**

Appellee,

vs.

**Ronald Eugene Cooley,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, judge.

A defendant seeks further review of a court of appeals decision affirming his conviction for failing to fulfill his sex offender registration requirements. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Thomas M. McIntee, Williamsburg, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.

**McDermott, Justice.**

Iowa law requires sex offenders to register their address with their local sheriff and, if they move, to "appear in person to notify the sheriff" of a change in residence within five business days. Iowa Code § 692A.104(1)–(2) (2021). When the county sheriff learned that sex offender Ronald Cooley had moved but had not registered his new address, the State charged Cooley with a registration violation. Cooley claimed that he appeared in person at the sheriff's office to change his address but that the sheriff's office was closed in response to the COVID-19 pandemic. The State conceded that the office was closed, but it argued that Cooley was nonetheless required to register his address by calling a phone number posted on the sheriff's office door. The district court rejected Cooley's request that the jury instructions include the "appear in person" requirement, and the jury convicted Cooley of a registration violation. In this appeal, we must decide whether appearing in person is an essential element of the crime of failing to register a change of address and, if so, whether the sheriff's office could modify that definition during the pandemic.

I.

In 1991, Cooley pleaded guilty to the offense of assault with intent to commit sexual abuse. This conviction later subjected Cooley to Iowa's sex offender registration requirements. *See* Iowa Code §§ 692A.102(1)(*b*)(6), .103(1). In early January 2021, Cooley moved to Marion in Linn County. Upon establishing his residence, Cooley had to register his address with the Linn County Sheriff's Office. *See id.* § 692A.104(1). Section 692A.104 states in relevant part:

> 1. A sex offender shall appear in person to register with the sheriff of each county where the offender has a residence, maintains employment, or is in attendance as a student, within five business

days of being required to register under section 692A.103 by providing all relevant information to the sheriff. . . .

2. A sex offender shall, within five business days of changing a residence, employment, or attendance as a student, appear in person to notify the sheriff of each county where a change has occurred.

*Id.* § 692A.104(1)–(2).

But in January, and for many months after, the Linn County Sheriff's Office remained closed to the public in response to the COVID-19 pandemic. The sheriff posted a large sign outside the building stating that the building was closed and that anyone who needed to contact the sheriff's office about the sex offender registry could call during business hours.

In early January, Cooley drove to the sheriff's office to register his address and learned that the office was closed. He saw the sign about the building's closure and the phone number to call. According to Cooley, his experience with the phone system was far from smooth. He claims that over the next few days, he called about twice a day but never reached anyone. He said that the number required him to navigate a series of prompts, but regardless of the prompt he chose, he could not get through to a human. The sheriff, for his part, claims to have had several secretaries within the office answering calls through four different phone lines and that no other callers reported problems. If someone called after hours, the phone system would route them to a dispatcher who would tell the caller to try again during normal business hours.

Despite his claimed difficulties, Cooley ultimately succeeded on January 11 in registering the address for his apartment in Marion by telephone. In late February, Cooley called the sheriff's office again and spoke with a representative to verify his information.

On April 14, a sergeant from the sheriff's office went to the Marion apartment to verify that Cooley lived there. The apartment was vacant. The sergeant soon learned that about a month earlier, the tenant with whom Cooley claimed to be cohabiting received a notice to vacate the apartment by March 30. The sheriff's office concluded that Cooley had failed to register his new address within five business days as required in § 692A.104(2).

According to Cooley, he moved from the Marion apartment to a new apartment in Cedar Rapids around April 1. Cooley claims that shortly after, he drove to the sheriff's office with a friend to register his new address in person but that the sheriff's office was still closed. Over the course of about a week, according to Cooley, he tried calling the sheriff's office number but again could not get through. He eventually connected by phone with an assistant who updated his address. Although the record is unclear what date this occurred, it is undisputed that it was beyond five business days from when he vacated the Marion apartment.

The State charged Cooley with two registration violations: falsely claiming to reside at the Marion apartment (count I), and failing to register his new address in Cedar Rapids within five business days (count II). The State also sought a habitual offender enhancement against Cooley under Iowa Code § 902.8. The jury ultimately acquitted Cooley of count I (that he did not actually reside at the Marion apartment), and we discuss it here no further.

Concerning the change-of-address violation, at the close of the State's evidence, Cooley moved for a judgment of acquittal, arguing that he complied with § 692A.104(2)'s requirement to "appear in person" within five business days of moving to Cedar Rapids to register his new address. The State argued that the closure of the sheriff's office in response to the pandemic did not eliminate

Cooley's duty to register his new address because he could accomplish it by phone.

The district court agreed with the State and denied the motion, concluding that because Cooley was permitted to register by phone and not in person, he suffered no prejudice. The court noted that during the office's closure, "the requirement to register actually became less onerous, not more." The district court similarly declined to grant an acquittal when Cooley renewed his motion at the close of his case.

Cooley then requested that the district court include language in its marshaling instruction that tracks § 692A.104(2)'s requirement that he "appear in person" to register the new address. The district court rejected Cooley's request and instead settled on the following instruction (Instruction 15):

> 1. On or about April 14, 2021, in Linn County, Iowa, the Defendant was required to register as a sex offender with the Linn County Sheriff;
>
> 2. The Defendant knew, or reasonably should have known, of his duty to register as a sex offender; and
>
> 3. On or about April 14, 2021, the Defendant failed to provide his new address to the Linn County Sheriff as required within five business days of obtaining a new residence.

The jury found Cooley guilty of failing to timely register his new address. Cooley filed a motion for arrest of judgment and a motion for a new trial, making the same arguments about satisfying the in-person requirement. The district court denied both motions. He was sentenced to an indeterminate term of fifteen years, with a three-year mandatory minimum as a habitual offender.

Cooley appealed. We transferred the case to the court of appeals. The court of appeals concluded that the district court did not err by omitting the in-person

language from the jury instructions and affirmed the conviction. We granted Cooley's application for further review.

## II.

Cooley argues that the district court erred when it omitted § 692A.104(2)'s in-person requirement from Instruction 15. The State maintains that the "in person" language was unnecessary because the instruction, as written, conveyed the applicable law. That's because, according to the State, it never asserted that Cooley's registration violation was related to a failure to appear *in person*. It contends, rather, that the district court properly omitted that language after concluding that Cooley could have registered by phone. We review challenges to jury instructions under a correction-of-errors-at-law standard. *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018).

Instruction 15 is count II's marshaling instruction. A marshaling instruction is one that "sets forth the elements of the crime and requires the State to prove those elements." *Conner v. State*, 362 N.W.2d 449, 453 (Iowa 1985). "When an instruction marshals the elements of a crime and mandates conviction upon the State's proof of those elements beyond a reasonable doubt, all essential elements of the crime must be included in the instruction." *State v. Billings*, 242 N.W.2d 736, 737 (Iowa 1976).

Whether the district court erred in omitting the "in person" language from the marshaling instruction thus turns on whether the in-person requirement is an element of this offense. Elements "are those 'constituent parts of a crime . . . that the prosecution must prove to sustain a conviction.' " *State v. Bailey*, 2 N.W.3d 429, 434 (Iowa 2024) (omission in original) (quoting *Elements of Crime*, *Black's Law Dictionary* 657 (11th ed. 2019)). To determine the elements of an offense, we look to the statute that defines the crime. *State v. White*,

545 N.W.2d 552, 555 (Iowa 1996) (en banc). When we construe statutory text, we "consider the overall structure and context of the statute, not just specific words or phrases in a vacuum." *State v. Lopez*, 907 N.W.2d 112, 120 (Iowa 2018).

Grasping the meaning of a statute in its full context requires, as an initial matter, that we read the whole statute. *See Doe v. State*, 943 N.W.2d 608, 611 (Iowa 2020). Reading § 692A.104 in its entirety, we note that almost every subsection includes registration requirements for which "[a] sex offender shall . . . appear in person." Subsection (1), for instance, imposes requirements for making an initial registration "in person." *Id.* § 692A.104(1). Subsection (2), the one at issue in this case, similarly imposes requirements for making changes in residence, employment, or student status "in person." *Id.* § 692A.104(2). Subsection (5), likewise, imposes requirements to report a move to another county "in person" in the new county. *Id.* § 692A.104(5).

Subsection (3), on the other hand, imposes reporting requirements for changes in an offender's "relevant information," which includes, for instance, things such as internet accounts, telephone numbers, temporary lodging addresses, and the names of cohabitants. *Id.* § 692A.104(3). Unlike subsections (1), (2), and (5), subsection (3) includes no "in person" language but instead states that the department of public safety may "establish by rule what constitutes proper notification." *Id.* The administrative regulation implementing subsection (3) permits offenders to update the "relevant information" in any of three ways: "in person, by telephone, or electronically." Iowa Admin. Code r. 661—83.3(4) (2021).

Subsection (7) reiterates the in-person requirements for every subsection in § 692A.104 *except* subsection (3), stating that "the initial or subsequent

registration and any notifications required in subsections 1, 2, 4, 5, and 6 *shall be by appearance at the sheriff's office." Id.* § 692A.104(7) (emphasis added).

A related section, § 692A.108, is the only provision in chapter 692A that confers authority to local sheriffs to waive an in-person requirement, and only then for a verification of existing information after the offender has previously appeared in person:

> A waiver of the next immediate in-person verification pursuant to this section may be granted at the discretion of the sheriff, if the sex offender appears in person at the sheriff's office because of changes to relevant information pursuant to section 692A.104 or 692A.105, and if the in-person verification pursuant to this section is within thirty days of such in-person appearance.

*Id.* § 692A.108(6). But even when a sheriff grants a waiver of in-person appearance, the sheriff must inform the department of public safety. *Id.* ("If a waiver is granted, the sheriff shall notify the department of granting the waiver.") None of § 692A.108's waiver provisions are in play here.

Read in full, the statute shows that the legislature specified particular methods for particular registration requirements. Some specified personal appearance; others did not. We read a material variation in terms in a statute to indicate a variation in meaning. *Bribriesco-Ledger v. Klipsch,* 957 N.W.2d 646, 650 (Iowa 2021). Because subsection (2) specified in-person registration and not registration by telephone or other means, we construe the statute to obligate that method only. Appearance in person is a mandatory part of the registration process and thus constitutes an element of the offense the State charged under § 692A.104(2).

"Although an instruction need not contain or mirror the precise language of the applicable statute, it must be a correct statement of the law." *State v. Schuler,* 774 N.W.2d 294, 298 (Iowa 2009). Omission of an element of an offense

in an instruction misstates the law. *See State v. Monk*, 514 N.W.2d 448, 451 (Iowa 1994) (en banc). We review instructions as a whole to determine their accuracy, with an eye toward whether other instructions have cured a mistake in a different instruction. *State v. Donahue*, 957 N.W.2d 1, 10 (Iowa 2021).

But in this case, no other instruction cured the omission in Instruction 15. Cooley's theory of defense focused on the fact that he appeared in person to change his registration. He presented evidence to support his claim, and he made a timely request to include the in-person requirement in the marshaling instruction. *See Monk*, 514 N.W.2d at 451. Cooley was thus entitled, in our view, to a marshaling instruction that required the State to show he failed to appear in person.

The State does not dispute that § 692A.104(2), as written, requires an offender in Cooley's position to appear in person. It argues instead that even without the "in person" language, the marshaling instruction accurately conveyed the law such that the jury understood the issues it needed to decide. In advancing this argument, the State focuses on the fact that the office's closure did not absolve Cooley of his duty to register, and that he could (and previously did) register by phone.

Although we agree that the office's closure didn't release Cooley from his change-of-address registration requirement, the statute makes clear what an offender must do to fulfill this duty: "appear in person." Nothing in Instruction 15 alerts the jury that it was the State's burden to prove that Cooley failed to appear in person. As a result, contrary to the State's argument, the marshaling instruction did not convey all the information that the jury needed to decide the issue.

The State describes Cooley's argument as setting forth an "impossibility" defense, but that's not quite right. Cooley doesn't argue that it was impossible for him to comply with the in-person requirement and thus that any failure to act must be excused. Indeed, Cooley testified that he did in fact appear in person at the sheriff's office. Cooley's argument is more accurately characterized as one of statutory construction: that he complied with the statutory duty to appear in person to update his address, and that the sheriff's office lacked the power to change the duty from one requiring in-person appearance to telephonic.

We recognize that the COVID-19 pandemic imposed unprecedented disruptions across society. *See, e.g., Rivas v. Brownell*, 18 N.W.3d 211, 219 (Iowa 2025) (holding that the Iowa Supreme Court had the constitutional authority to toll the statute of limitations for civil claims during the pandemic); *State v. Basquin*, 970 N.W.2d 643, 657 (Iowa 2022) (holding that the Iowa Supreme Court had the constitutional authority to temporarily suspend a rule of criminal procedure governing guilty pleas during the pandemic). But "[c]riminal statutes are . . . inelastic, and cannot by construction be made to embrace cases plainly without the letter though within the reason and policy of the law." *State v. Lovell*, 23 Iowa 304, 305 (1867) (emphasis omitted). This is why "[a]ny recasting of the scope of criminal liability . . . is the province of the legislature." *State v. Muhlenbruch*, 728 N.W.2d 212, 216 (Iowa 2007). Interpreting criminal statutes rigidly, regardless of the surrounding circumstances, helps "prevent[] inconsistent and arbitrary enforcement" while also "promot[es] separation of powers by ensuring that crimes are created by the legislature, not the courts." *State v. Hearn*, 797 N.W.2d 577, 584 (Iowa 2011). Chapter 692A is no exception: "We strictly construe the penal provisions of chapter 692A, requiring fair warning of the conduct prohibited, with doubt

resolved in favor of the accused." *Maxwell v. Iowa Dep't of Pub. Safety*, 903 N.W.2d 179, 183 (Iowa 2017). We thus conclude that the district court erred in failing to include language in the marshaling instruction that required the State to prove Cooley's noncompliance was based on a failure to appear in person.

But this does not end our analysis. Cooley contends that if we conclude that the district court erred by omitting this language, then the district court also erred by denying his motion for acquittal. That's because, according to Cooley, both he and his friend testified that he appeared at the sheriff's office within five business days, and thus the State cannot prove beyond a reasonable doubt that he failed to comply with that element. The State, on the other hand, asserts that any error in the marshaling instruction was harmless because the State proved beyond a reasonable doubt that in addition to failing to register by phone, Cooley also failed to appear in person to register.

Whether harmless error even applies when an element is omitted from jury instructions does not have a clear answer in our caselaw. *See, e.g., Schuler*, 774 N.W.2d at 299–300 (identifying the ambiguity); *see also State v. Shorter*, 945 N.W.2d 1, 12 (Iowa 2020) (Appel, J., concurring specially) (noting that the ambiguity still exists). Because neither party asks us to resolve that question today, we will assume that harmless error applies. *Shorter*, 945 N.W.2d at 9 n.2 (majority opinion).

A harmless error analysis asks "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.* (quoting *State v. Kennedy*, 846 N.W.2d 517, 527 (Iowa 2014)). It is the State's burden to establish that the district court's error was harmless. *Id.* On this record, we cannot conclude that the instructional error was harmless.

Although the jury wasn't obligated to believe the testimony of Cooley or his friend, *see State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993), that the jury acquitted Cooley of count I suggests that it perhaps found at least some of his testimony credible. Whether the jury found Cooley's testimony about his purported in-person appearance credible, however, is unknown because the marshaling instruction omitted that element. "[A] court must be careful not to usurp the role of a jury by making credibility determinations that are outside the proper scope of the judicial role." *State v. Paredes*, 775 N.W.2d 554, 567 (Iowa 2009). Stated simply, we're unable to say whether the jury surely would have found Cooley guilty beyond a reasonable doubt had it been properly instructed. *Schuler*, 774 N.W.2d at 301. The parties can present the issue again on remand, this time with a corrected marshaling instruction.

III.

We reverse Cooley's conviction, vacate the sentence, and remand for a new trial.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**