# IN THE SUPREME COURT OF IOWA

No. 07–1131

Filed September 4, 2009

**STATE OF IOWA,**

Appellee,

vs.

**RUSSELL WILLIAM SCHULER,**

Appellant.

Appeal from the Iowa District Court for Black Hawk County, Bruce B. Zager, Judge.

Defendant challenges conviction for willful injury causing serious injury alleging an error in the jury instructions. **REVERSED AND REMANDED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and James Katcher, Assistant County Attorney, for appellee.

**APPEL, Justice.**

This case centers on the validity of the jury instruction for the crime of willful injury causing serious injury. The defendant asserts that the instruction fails to set forth the elements of willful injury as established by the Code of Iowa. Specifically, he alleges that the instruction impermissibly lowered the State's burden of proof by requiring that it prove only that the victim "sustained" a serious injury instead of demonstrating that the defendant's actions "caused" a serious injury. For the reasons expressed below, we agree with the defendant, reverse his conviction, and remand the case for a new trial.

## I. Factual and Procedural History.

In the early morning hours of August 31, 2006, the defendant Russell Schuler, along with his sister Jennifer Schuler and several friends, was involved in a violent altercation outside Flirts Gentlemen's Club in Waterloo, Iowa. Although witness accounts varied considerably, the incident began shortly after Lucas Spinelli arrived at the club. Words were exchanged, and the interaction quickly turned violent between Spinelli, his dog, and Jennifer. Spinelli testified that Jennifer "socked me pretty good for a girl . . . right in the side of my face." After this initial altercation, Spinelli left the scene and parked his car at the Iowa Community Credit Union, just a short distance from Flirts.

Russell soon joined Spinelli at the bank parking lot, followed by Jennifer and their group of friends. The fight quickly resumed. Spinelli, while admitting that he did not have a clear recollection of the events due to his injuries, testified that Russell attempted to choke him while someone else grabbed him from behind. Spinelli asserted that he was then attacked by multiple assailants—four men and two women—and was repeatedly kicked after he had fallen to the ground and that the

attack only ceased after repeated begging and pleading. Spinelli described one of these assailants as having long, dark hair. The victim had no recollection, however, other than his initial faceoff with Russell, of either of the Schulers participating in the brawl. After the altercation, Spinelli made numerous attempts to stand up, falling to the ground on his face each time. A doctor later testified that a portion of the victim's injuries could be due to these falls.

The bank fight was witnessed by cab driver George Bowser. Bowser testified that he witnessed Spinelli and at least one other male pushing each other before others arrived at the scene. At that point, the group entered the melee with everyone at the scene participating. Bowser testified that the assault continued after Spinelli was on the ground. In particular, the witness observed a female in a white, button-up shirt with long, dirty blond hair run up and hit the injured man. Later the witness identified this shirt as the cover-up typically worn by dancers after performing at Flirts. Spinelli also reportedly told police, "I couldn't believe that dancer was hitting me and kicking me." Finally, Bowser testified that a man continued kicking the victim after the rest of the group had stopped. The witness described the man as having long, dark hair. The cab driver was not able to positively identify any of the participants in the brawl.

Other witnesses offered different recollections. Holly Lorenz, a friend of the Schulers, testified that Spinelli had been the initial aggressor, attacking Russell with a two-by-four. Lorenz further asserted that another member of their group, Trevor Roberts, was involved in the altercation but that he had discontinued fighting after Spinelli had been subdued. At that point, only the Schulers were involved, with Jennifer

only involved "a little bit." Lorenz further asserted that Spinelli fought back the entire time.

In addition to the live testimony, the State introduced Russell's and Jennifer's taped interviews with law enforcement. While maintaining that he acted in self-defense, Russell admitted, in colorful language, to striking Spinelli four or five times in the face with significant force. He also told police that no one else was involved in the altercation. Although not admitted as evidence against Russell, Jennifer's statements to law enforcement acknowledge an active role in the assault.

After the assault, Spinelli was transported to Allen Hospital where he was sedated, intubated, and transferred by helicopter to the University of Iowa Hospitals and Clinics due to his "life-threatening injuries." Spinelli's pallet was completely dislodged, and his nose and jaw were broken.

The Schulers, in turn, returned to Flirts to await the arrival of law enforcement. Law enforcement took numerous photographs of the two, as well as seized their clothing. Lab tests later revealed Spinelli's blood on Russell's and Jennifer's clothing. Their own blood was also identified at the scene as well as that of an unidentified individual. Over the course of that morning and the ensuing month, the two cooperated with local police and submitted to questioning. At the conclusion of the investigation, the Schulers along with Roberts were charged with willful injury causing serious injury in violation of Iowa Code section 708.4(1) (2005).

The defendants individually filed a number of pretrial motions, including a motion to sever their trials and a motion to produce the entirety of Spinelli's medical records from Allen and the University of Iowa Hospitals. The district court denied each of these motions.

A joint jury trial commenced on May 1, 2007. Prior to submission of the case to the jury, the defendants objected to the wording of Instruction No. 20, the jury instruction for willful injury causing serious injury. Russell asserted that the instruction failed to properly set forth the statutory requirements of willful injury as it did not require the jury to find that he "caused" Spinelli's serious injury. The defendant noted that this omission was particularly acute given the inclusion of the causation element in the instructions for the lesser-included offenses of assault. While acknowledging that there were "differences between the elements for a willful injury, whether it's causing a bodily injury or a willful injury causing serious injury," the district court overruled the objection.

On May 9, the jury returned a verdict of guilty against all three defendants, finding Russell and Jennifer guilty of the top count of willful injury causing serious injury and Roberts guilty of the lesser-included offense of assault causing bodily injury. Russell was sentenced to an indeterminate prison term of ten years and assessed a fine of $1000.

The defendant filed a timely notice of appeal. On appeal, he asserts that his conviction was in error as (1) the jury was improperly instructed as to the elements of willful injury, allowing it to find him guilty without finding that his actions "caused" the victim's serious bodily injury; (2) the trial court erred by refusing to sever his trial from that of his co-defendants; and (3) he was improperly denied access to the totality of the victim's medical records.

## II. Standard of Review.

"We review jury instructions to decide if they are correct statements of the law and are supported by substantial evidence." *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996). The district court has a

"duty to instruct fully and fairly" on the law applicable to "all issues raised by the evidence." *State v. Stallings*, 541 N.W.2d 855, 857 (Iowa 1995). The validity and sufficiency of jury instructions are not evaluated in isolation, but rather in context with other instructions as a whole. *Id.*

Discovery matters are committed to the sound discretion of the trial court and are reviewable for an abuse of discretion. *State v. Groscost*, 355 N.W.2d 32, 34 (Iowa 1984). An abuse of discretion will not be found unless the defendant demonstrates " 'that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Morrison*, 323 N.W.2d 254, 256 (Iowa 1982) (quoting *State v. Buck*, 275 N.W.2d 194, 195 (Iowa 1979)).[1]

**III. Discussion.**[2]

**A. Jury Instruction for Willful Injury.** Iowa Code section 708.4(1) sets forth the elements of the crime of willful injury causing serious injury. Under Iowa law a person commits willful injury causing serious injury when a person "does an act which is not justified and which is intended to cause serious injury to another . . . [and] the person causes serious injury to another." Iowa Code § 708.4(1). Russell asserts

---

[1]The defendant asserts that our review should be de novo as the denial of his motion to produce could have had constitutional implications as the requested information could have proven exculpatory under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We reject that argument, however, because there is no indication from the record presented here that the State *suppressed* evidence which could be favorable to the defendant. The record indicates that the State merely failed to *seek* evidence.

[2]On appeal, Russell asserts that the district court erred in refusing to sever his trial from his co-defendants. Upon review of the record, we find that Russell did not join the motion for severance made by his co-defendant. Russell thus did not preserve error on this issue. In addition, our disposition of the jury instruction issue may change the nature of his argument for severance. As a result, on remand and upon proper motion, the district court may wish to reconsider the severance issue in light of this opinion.

that his conviction was in error as the marshalling instructions for willful injury did not properly set forth these elements.

The jury was instructed that Russell committed willful injury causing serious injury if it found the following:

1. On or about August 31, 2006, the Defendant punched, kicked, and/or grabbed Lucas Spinelli.

2. The Defendant specifically intended to cause a serious injury to Lucas Spinelli.

3. Lucas Spinelli sustained a serious injury.

Russell's allegation of error thus lies with subsection 3, which allowed the jury to find him guilty if they determined that Spinelli *sustained* a serious injury without finding that Russell's actions *caused* his serious injury.

Although an instruction need not contain or mirror the precise language of the applicable statute, it must be a correct statement of the law. *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 324 (Iowa 1992). Here, the difference between the statutory elements and the instruction for willful injury is not stylistic, it is substantive. The challenged words—sustained and caused—are two different words with two different meanings. *Black's Law Dictionary* defines "sustain" as "[t]o support or maintain" or "to undergo; suffer." *Black's Law Dictionary* 1488 (8th ed. 2004). "Cause," conversely, is defined as "[t]o bring about or effect." *Id.* at 235. "Sustained" thus has a passive connotation, while "caused" has an active inference. The words are simply not synonymous.

Use of the word "sustained" in the instruction for willful injury causing serious injury is exacerbated by the wording for the lesser-included assault offenses. For example, Instruction No. 23 explicitly required the jury to find that Russell's actions "caused" a serious injury

to Spinelli in order to find him guilty of assault causing serious injury. The same is true for Instruction No. 27, which set forth the elements of assault causing bodily injury.

The State seeks to sustain the instruction on willful injury causing serious injury by asserting that a logical reading of the instruction requires the prosecution to prove causation. In particular, the State suggests that each of the elements of this instruction builds on the one preceding it. For example, the intent element—subsection 2—refers back to the acts committed in the first element. Likewise, the State asserts, the serious injury to which the third element refers must necessarily arise out of the actions referenced in the first element.

While the State's interpretation is plausible, it is not the *only* reasonable inference of the instruction as given, especially under the factual scenario presented here. Numerous persons, including all three defendants, were active participants in the violent altercation outside Flirts Gentlemen's Club. Moreover, there were conflicting witness statements as to which defendant struck Spinelli and in what manner. It is therefore plausible that the jury could find that although Russell assaulted Spinelli, his assault did not *cause* the victim's bodily injury. Nothing in Instruction No. 20 explicitly required the jury to find that Russell's actions caused Spinelli's injuries.

We cannot simply assume, as the State urges, that the jury necessarily made an implicit finding on the causation issue. *State v. McMullin*, 421 N.W.2d 517, 518–19 (Iowa 1988). The jury instruction for willful injury causing serious injury is faulty as it allows the jury to convict without finding all of the elements as prescribed by Iowa Code section 708.4(1), namely that the defendant's actions caused the victim's serious injury.

**B. Harmless Error.** The State seeks to avoid the necessity of a new trial by asserting that the defendant was not prejudiced by the error in the willful-injury-causing-serious-injury jury instruction. The State claims that even where there is an error in instructions involving an element of a crime submitted to the jury, any presumption of prejudice may be overcome upon a showing that the error was harmless beyond a reasonable doubt. Russell asserts that where there is an error in the instructions related to an element of a theory of guilt, reversal is required. In the alternative, Russell asserts that even if the harmless error doctrine applies, the State has failed to show that the flaw in the instructions in this case was harmless beyond a reasonable doubt.

The United States Supreme Court confronted the issue in *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). In *Neder*, a sharply divided court held that an erroneous jury instruction that omits an element of the offense is subject to harmless-error analysis. *Neder*, 527 U.S. at 10, 119 S. Ct. at 1834, 144 L. Ed. 2d at 48. While some state courts have followed *Neder*, *see, e.g., State v. Daniels*, 91 P.3d 1147, 1156 (Kan. 2004); *State v. Tomlinson*, 648 N.W.2d 367, 383–84 (Wis. 2002), a number have declined to follow the *Neder* majority, with at least one state court suggesting that its precedential value may be short lived, *Freeze v. State*, 827 N.E.2d 600, 605 (Ind. Ct. App. 2005) ("The idea that a deprivation of the Sixth Amendment right to a jury trial could ever be considered 'harmless' is of recent and now-questionable vintage."); *see also People v. Nitz*, 820 N.E.2d 536, 556 (Ill. App. Ct. 2004) (suggesting that a majority of the United States Supreme Court now prescribe to the *Neder* dissent), *aff'd in part and rev'd in part*, 848 N.E.2d 982 (Ill. 2006).

The cases that decline to follow *Neder* are more consistent with the approach suggested by Justice Scalia in *California v. Roy*:

> The absence of a formal verdict on this point cannot be rendered harmless by the fact that, given the evidence, no reasonable jury would have found otherwise. To allow the error to be cured in that fashion would be to dispense with trial by jury. "The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty."

*California v. Roy*, 519 U.S. 2, 7, 117 S. Ct. 337, 339, 136 L. Ed. 2d 266, 272 (1996) (Scalia, J., concurring) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 280, 113 S. Ct. 2078, 2082, 124 L. Ed. 2d 182, 190 (1993)).

In Iowa, an older case suggests that where there is an error or omission in an instruction related to an *element* of the criminal offense, prejudice is presumed but may be overcome upon a showing beyond a reasonable doubt that the error was harmless. *State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983). Our more recent cases, however, have reversed convictions where instructions describing the elements of an offense are flawed without harmless error analysis. *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006).

We do not find it necessary to decide the issue here, however, as even if we apply the State's test, we cannot find that the presumption of prejudicial error from an erroneous instruction on the elements of a crime was overcome by overwhelming evidence beyond a reasonable doubt. Each witness at trial presented a markedly different version of the events of August 31. The severity and type of Russell's involvement varies from witness to witness. As a result, we cannot conclude with any degree of certainty that the jury would have found Russell guilty beyond a reasonable doubt had it been properly instructed. For instance, a reasonable jury might conclude that Spinelli sustained the serious injury

during the first encounter outside Flirts, prior to Russell's involvement, when Jennifer "socked" Spinelli.

Further, both the victim and the sole uninterested witness, cab driver Bowser, testified that upwards of six people participated in the fight and that a primary participant was a man with long, dark hair. None of the defendants, moreover, fits the description of the long-haired individual who was reported to be last to stop fighting. Only four participants of the melee were identified—Russell, Jennifer, Roberts, and Lorenz. If any other individual participated, including the woman with long, blond hair and a white cover-up, they were not indentified at trial. A reasonable jury could determine that the State failed to meet its burden of proof because one of these unidentified individuals could have "caused" Spinelli's injuries. As a result, this case must be remanded for new trial despite the evidence, including his own statements, of Russell's participation in the brawl. *See State v. Martens*, 569 N.W.2d 482, 485 (Iowa 1997) ("[T]he validity of a verdict based on facts legally supporting one theory for conviction of a defendant does not negate the possibility of a wrongful conviction of a defendant under a theory containing legal error.").

**C. Medical Records.** Because this issue may reemerge at retrial, we take this opportunity to review Russell's third allegation of error, namely that the district court erred in denying his motion to compel the State to produce the totality of Spinelli's medical records.

Before the district court, Russell alleged that he had not received all of the victim's medical records related to the assault. Specifically, the defendant asserted that in all likelihood both Allen Hospital and the University of Iowa had performed blood tests on Spinelli, yet Russell had received only one test result. A defense expert further opined that in all

probability less than half of the available records had been turned over to the defense.

The State acknowledged that the defendant was probably correct and that Spinelli's medical records were incomplete. Nevertheless, the State asserted that it had turned over all records in its possession and would turn over any future records that might be obtained, but asserted that it had no ability to produce records which were not in the possession of the prosecution or law enforcement. The court accepted the professional statement of the prosecutor, concluded that the defendants would "need to take whatever efforts they need to obtain those medical records," and denied the motion.

On appeal, Russell asserts the district court erred by not ordering the State to produce the missing files. He distinguishes our previous decision in *State v. Stratton*, 519 N.W.2d 403, 404–05 (Iowa 1994), where we rejected a similar claim, because unlike *Stratton*, here the State had a full medical waiver from the victim. According to the defendant, this waiver gave the State "control" over Spinelli's medical files.

We disagree. Iowa Rule of Criminal Procedure 2.14(2)(*b*)(1) provides, in relevant part:

> Upon motion of the defendant the court may order the attorney for the state to permit the defendant to inspect, and where appropriate, to subject to scientific tests, items seized by the state in connection with the alleged crime. The court *may* further allow the defendant to inspect and copy books, papers, documents, statements, photographs or tangible objects which *are within the possession, custody or control of the state,* and which are material to the preparation of the defense, or are intended for use by the state as evidence at the trial, or were obtained from or belong to the defendant.

Iowa R. Crim. P. 2.14(2)(*b*)(1) (emphasis added). While the medical waiver may have given the State a superior ability to access the files, this fact alone does not demonstrate that the State had "control" over the files

for purposes of discovery. *See Nelson v. United States*, 649 A.2d 301, 307–08 (D.C. 1994) (concluding that medical records which were not sought by the prosecution were not in the state's possession regardless of a medical waiver).

Even if we were to assume that the waiver did grant the State control over Spinelli's medical files, we cannot say that the district court abused its discretion by denying the defendant's motion to compel. Russell has not suggested that the motion to compel was his *exclusive* means of obtaining these records. In fact, the record suggests that one of Russell's co-defendants obtained a complete set of the victim's medical records from Allen Hospital through use of a subpoena duces tecum. "[W]hen evidence is equally accessible to the defendant and the State, the State is not required to produce it." *Stratton*, 519 N.W.2d at 405; *accord State v. Galloway*, 187 N.W.2d 725, 729 (Iowa 1971).

## IV. Conclusion.

For the reasons expressed above, the defendant's conviction for willful injury causing serious injury is reversed and the case is remanded to the district court.

**REVERSED AND REMANDED.**

All justices concur except Streit, J., who takes no part.