# IN THE COURT OF APPEALS OF IOWA

No. 20-0130
Filed January 27, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KALEB DARREL MORROW,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Appanoose County, Gregory G. Milani, Judge.

Kaleb Morrow appeals his convictions for interference with official acts—serious injury, assault on person in certain occupations, and harassment in the first degree. **AFFIRMED.**

Bret R. Larson of Orsborn, Mitchell, Goedken & Larson, P.C., Ottumwa, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Kaleb Morrow appeals his convictions for interference with official acts—serious injury, assault on person in certain occupations, and harassment in the first degree. He challenges the sufficiency of the evidence of his intent to inflict serious injury and an evidentiary ruling. Because substantial evidence supports the finding the defendant had the specific intent to inflict serious injury to support the convictions and Morrow suffered no prejudice from the evidentiary ruling, we affirm.

## I. Background Facts.

Morrow is a Centerville native who has experienced substance-abuse and mental-health issues including hospitalizations and encounters with law enforcement since his return to the area from his second military deployment overseas.

On March 17, 2019, Centerville Police Officer Gary Buckallew was on routine patrol when he was contacted by dispatch to look for Morrow because off-duty Sergeant Jeremy Cole reported Morrow was walking around the Centerville High School and there was a warrant for his arrest. Officer Buckallew saw Morrow as he was patrolling the high-school area. He parked his patrol vehicle; exited the marked vehicle wearing his uniform, badge, and duty belt; and started speaking with Morrow. Officer Buckallew's bodycam recorded the encounter, though there is about a twenty-second delay in the audio portion of the recording. After a brief interaction between Officer Buckallew and Morrow, the officer suggested Morrow take a seat in his patrol car. Officer Buckallew casually conversed with Morrow and checked Morrow's coat pockets before handing it to him. During this part of

the interaction, Morrow was slightly evasive in his answers to the officer's questions, refused to give his date of birth, and stated "there was no need to shut that door" when Officer Buckallew started to close the back door of the patrol vehicle.

Officer Buckallew checked with dispatch and was advised there was a pending arrest warrant for Morrow. The officer calmly informed Morrow he had to take him to the station for probation-violation warrant and needed to handcuff him. Morrow became immediately aggressive: raising his voice, pointing his finger at the officer, and "warned" the officer he was interfering with official railroad business. Morrow stated the officer faced "penalty of death," life in prison, and financial consequences. Morrow continued being argumentative and verbally aggressive. For his part, Officer Buckallew quietly attempted to convince Morrow to cooperate and calm down. The officer told Morrow he did not want to have to yell and scream at him. Morrow became more defensive in his behaviors and speech; he resisted the officer's attempt to handcuff him. Officer Buckallew told Morrow he would tase him if he did not cooperate. The trial court found Morrow "bolted" from the police car, taking Officer Buckallew to the ground. Officer Buckallew was face-down on the ground, and Morrow was on Officer Buckallew's back, punching him in the head and back, yelling, "I will kill you." The officer was yelling "please don't." In the struggle, Officer Buckallew's duty belt unlatched and his service revolver was loose on the ground. The trial court found, "At this point, [Officer] Buckallew, who was taken by surprise and trapped under Morrow, was clearly in fear for his life and safety."

Sergeant Cole was driving by the area in his personal pickup truck and observed the interaction from about 100 yards away. He recognized Officer Buckallew was not in control of the situation. Sergeant Cole moved to the scene, parked his vehicle, and pulled Morrow off of Officer Buckallew. Morrow continued to struggle against being handcuffed by Sergeant Cole.

In the meantime, Jennifer Donaldson called dispatch and reported an officer was "fighting" with a person in the high school parking lot and appeared to be in need of assistance. Donaldson reported the appearance of a third person in a truck, who because of his attire might pose a further threat to the officer.

While Sergeant Cole struggled to detain Morrow, Officer Buckallew regained his footing and tased Morrow. Sergeant Cole was then able to handcuff Morrow. Morrow addressed Sergeant Cole as "officer" and told him Officer Buckallew was an "enemy insurgent." After being placed in the patrol car, Morrow continued a rant and said, "You, sir, have messed with me far too many times." Morrow was transferred to the law center and booked without further issues, though he did loudly assert grievances and proclaim he was a railroad agent.

Officer Buckallew "received scratches on his neck, reinjured an old knee injury, was bruised, and generally roughed up."

Morrow was charged with attempted murder; interference with official acts—serious injury; assault on person in certain occupations; and harassment in the first degree. He filed a defense of diminished responsibility and was interviewed and evaluated by defendant's expert, Dr. Luis Rosell, and the State's expert, Dr. Veronica Lestina. Both experts submitted their reports, which were admitted into evidence at the subsequent bench trial. Dr. Rosell concluded: "[B]ased on

Mr. Morrow's extensive psychiatric history, the current interview, testing, and the video, it appears that he reacted impulsively when experiencing the threat and he lacked forming the specific intent to harm law enforcement." Dr. Lestina summarized her conclusions: "Mr. Morrow had the capacity to form the required intent to intentionally harm, with the verbalized desire to kill the officer, and attempt to complete the murder of Officer Buckallew."

The court acquitted Morrow of attempted murder and convicted him of the remaining charges.[1] He was sentenced to concurrent terms of imprisonment.

Morrow appeals. He first contends there was insufficient evidence he possessed the specific intent to inflict serious injury to the police officer to support the convictions for interference with official acts—serious injury and assault on person in certain occupations. Morrow also asserts the trial court erred in sustaining the State's objection when his expert witness was testifying.

**II. Scope and Standards of Review.**

"[F]indings of fact in jury-waived cases shall have the effect of a special verdict." Iowa R. App. P. 6.907; *see State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020). "The district court's finding of guilt is binding upon us unless we find there was not substantial evidence in the record to support such a finding." *State v. Warren*, 955 N.W.2d 848, 857 (Iowa 2021) (citation omitted). "Substantial

---

[1] The district court also found Morrow guilty of assault with intent to inflict serious injury, a lesser-included offense of attempted murder. However, pursuant to Iowa Code section 701.9 (2019), the court ruled:

> The court will not enter a verdict of guilty to the lesser-included offense of attempted murder as charged in Count I due to the fact that the lesser-included offense of assault with intent to inflict serious injury is merged with or included in the finding of guilt of assault on persons in certain occupations, in violation 708.3A(1) in Count III.

evidence means 'such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.'" *Id.* (citation omitted).

Evidentiary rulings are reviewed for an abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). "When assessing a district court's decision for abuse of discretion, we only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable." *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017).

## III. Discussion.

*A. Substantial evidence of specific intent to inflict serious injury.* Morrow asserts the evidence presented at trial does not support a finding that Morrow had the specific intent to inflict serious injury to Officer Buckallew, focusing on the fact Officer Buckallew did not sustain a serious injury. He notes the officer did not require hospitalization or medication.

If the offenses at issue had as an element a causation of a serious injury, Morrow's observations would have some weight. *See*, *e.g.*, *State v. Schuler*, 774 N.W.2d 294, 298 (Iowa 2009) (finding that a jury instruction that required a showing only that the victim *sustained* a serious injury was erroneous because "'[s]ustained' . . . has a passive connotation, while 'caused' has an active inference"). But the offenses here do not have a causation element. The trial court set out the elements of the offenses:

> Count II of the State's amended trial information charges Morrow with interference with official acts, serious injury, in violation of Iowa Code section 719.1(1)(f).
> To convict the defendant of Count II, the State must prove beyond a reasonable doubt that A, on or about March 17th, the defendant knew Buckallew was a peace officer; B, the defendant knew Buckallew was serving an arrest warrant; C, the defendant

knowingly resisted or obstructed Buckallew in the serving of the arrest warrant; and D, the defendant inflicted or attempted to inflict serious injury upon Buckallew.

Count III of the State's amended trial information charges Morrow with assault on persons in certain occupations, a class D felony, in violation of Iowa Code section 708.3A(1). In order for the State to convict the defendant of Count III, the State must prove beyond a reasonable doubt that on or about the 17th day of March, 2019, the defendant did an act which was intended to cause pain or injury; B, the defendant had the apparent ability to do the act; C, the act was done with the specific intent to cause injury; and D, the act was perpetrated upon a peace officer.

So, the charge of interference with official acts did not necessarily require causation of a serious injury—an attempt to inflict serious injury suffices. Iowa Code § 719.1(1)(f). And the offense of assault on persons in certain occupations did not require the defendant's act caused serious injury—it was sufficient that the State show the defendant "did an act which was intended to cause pain or injury . . . with the specific intent to cause injury." *See id.* § 708.3A(1).

In its factual findings, the trial court observed:

The defendant timely raised the defense of diminished responsibility. The defendant's diminished responsibility defense is uncodified per se but is recognized by present law as a common law defense. This defense applies in those situations in which the State must prove the defendant's specific intent as an element of the crime charged. Therefore, the court must address whether, at the time of the incident, the defendant, due to a limited capacity to think, was unable to form the necessary criminal intent.

As the defendant's expert witness, Dr. Rosell, correctly stated in his report, "There is no known psychological instrument that can measure a person's state of mind at a specific time in their past."

The court did have the benefit of the defendant's testimony, the defendant's mother's testimony, and the testimony of Drs. Rosell and Lestina to assist in the analysis of [Morrow's] diminished responsibility. Ultimately, this determination falls upon the court using its observations, common sense, and experience while setting aside any sympathy, bias, prejudice, or emotions.

(Citations omitted.)

Intent is usually proven "by circumstantial evidence and by inferences reasonably to be drawn from the conduct of the defendant and from all the attendant circumstances in the light of human behavior and experience." *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) (citation omitted). Here, the trial court found "that by beating Buckallew on the torso and head, that [Morrow] did intend to inflict serious injury on Buckallew and that, but for Cole's intervention, he would have been successful in that endeavor." There is substantial evidence to support the district court's findings, and we therefore affirm the convictions.

*B. Expert opinion.* Morrow argues the only evidence in the record with regard to specific intent is his expert's conclusion in his report that Morrow "lacked forming the specific intent to harm law enforcement." He asserts the court erred in sustaining the State's objection during Dr. Rosell's testimony:

> DEFENSE COUNSEL: The use of the words "I will kill you," does that—is that by itself evidence of an intent to follow through?
> PROSECUTOR: Your Honor, I object. I don't think it's appropriate for this witness to comment on whether or not Mr. Morrow did or did not have specific intent. I think as an expert he can only testify about whether or not Mr. Morrow is capable of forming specific intent.
> THE COURT: I think we're getting into the province of the judge. I'll sustain that objection.

Morrow argues Dr. Rosell was qualified to render an opinion on Morrow's intent at the time of the incident and he was prejudiced by the court's ruling. He asserts that if Dr. Rosell were allowed to testify as to his opinion on Morrow's specific intent during the altercation, Dr. Rosell would have testified in accordance with his report, i.e., that Morrow "lacked forming the specific intent to harm law enforcement."

"A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party." Iowa R. Evid. 5.103(a). Even if we assume the court could have allowed the opinion testimony,[2] the court was the factfinder. As we have already noted above, the district court considered all the evidence, including both expert witnesses. The court determined Morrow "could and did form specific intent." The court's factual findings are binding on us because they are supported by substantial evidence, and we, therefore, affirm.

**AFFIRMED.**

---

[2] Morrow relies on Iowa Rule of Evidence 5.704, "An opinion is not objectionable just because it embraces an ultimate issue." *But see State v. Tyler*, 867 N.W.2d 136, 154 (Iowa 2015) ("However, an expert may not opine as to whether a particular legal standard has been satisfied or to 'the defendant's guilt or innocence.'" (citation omitted)).