# In the Iowa Supreme Court

No. 23–1001

Submitted December 16, 2025—Filed February 13, 2026

**State of Iowa,**

Appellee,

vs.

**Joshua Kelly Uranga,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Boone County, Bethany Currie, judge.

The defendant challenges the sufficiency of the evidence to support his conviction under Iowa Code section 692A.105 requiring him to register a temporary stay away from his principal residence on the sex offender registry.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Alexandar Smith of Parrish Kruidenier L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

**Oxley, Justice.**

Joshua Uranga was found guilty of violating a sex offender registry requirement for the second time, a class "D" felony. Iowa Code § 692A.111(1) (2021). Uranga was charged and convicted under Iowa Code section 692A.105, which requires a sex offender to notify the county sheriff about temporary lodging away from the offender's principal residence for more than five days. The State presented no evidence, however, that Uranga stayed away from his principal residence for more than five days to trigger the registration requirement under section 692A.105. The State instead based its prosecution on Uranga's failure to register his change in residence from Pilot Mound to Boone when Uranga's only residence in Iowa changed, as required by Iowa Code section 692A.104. But section 692A.105 does not impose any registration requirements in such a situation. Uranga's conviction under the temporary lodging provision is not supported by sufficient evidence, so we reverse the court of appeals and remand the case to the district court to enter a judgment of acquittal.

## I. Factual Background and Proceedings.

Uranga has been required to register as a sex offender since 2002. *See id.* § 692A.103 (identifying who qualifies for the sex offender registry). Registered sex offenders must comply with the requirements of Iowa Code chapter 692A, which includes various obligations to register certain information with the county sheriff's office. In September 2021, the Boone County Sheriff's Office began to suspect that Uranga was violating his registration requirements. Although Uranga registered an address in Pilot Mound as his residence with the Boone County Sheriff's Office on August 30, local authorities did not find him there when they attempted to serve a civil paper on September 16. Patrick Fairchild, whose family owned the Pilot Mound residence, told the authorities

that Uranga did not live there and had not lived there for some time. According to Fairchild, Uranga slept at the residence four times per month at most. Local authorities could not find Uranga at the Pilot Mound address despite multiple visits trying to verify that Uranga did in fact reside at the address. The Pilot Mound address was Uranga's only registered residence in Iowa.

In November, Boone County Sheriff's Deputy Dan Ruter executed a search warrant for the property in Pilot Mound to look for indicia that Uranga occupied the residence. Uranga again was not at the property, and Deputy Ruter found no indication inside the building that Uranga lived there. Fairchild was present when the search was conducted. He told Deputy Ruter the only item in the residence that may have belonged to Uranga was a dusty toothbrush in the bathroom. The next day, November 18, Uranga was legally evicted from the Pilot Mound residence. On November 30, Uranga registered a new residence in Boone with the Boone County Sheriff's Office.

The State filed a trial information charging Uranga with violating the sex offender registry requirements in Iowa Code sections 692A.103, .105, and .111. The trial information stated that Uranga did not comply with his registration requirements in the following manner:

> [B]y failing within five business days of a change, to appear in person to notify the sheriff of the county of principal residence, of any location in which the offender is staying when away from the principal residence of the offender for more than five days by identifying the location and the period of time the offender is staying in such location . . . .

Section 692A.103 identifies who must register as a sex offender and comply with chapter 692A's registration requirements. *Id.* § 692A.103. Section 692A.111 lays out the penalties for a sex offender's failure to comply with the registration requirements. *Id.* § 692A.111. Section 692A.105, the crux of the charge,

instructs a sex offender to notify the county sheriff "of any location in which the offender is staying when away from the principal residence of the offender for more than five days." *Id.* § 692A.105; *accord id.* § 692A.101(20)(*a*) (defining "principal residence" as "[t]he residence of the offender, if the offender has only one residence in this state").

At trial, the State opened its remarks by reading the trial information to the jury and framing the crime that Uranga was charged with this way:

> Members of the jury, a Trial Information is quite long-winded as you can imagine. So it's my job to prove to you and earn a guilty verdict from you and firmly convince each and every one of you that Mr. Uranga committed a crime. The crime is this, the State is charging Mr. Uranga with failing to notify the sheriff when he was not staying at his principal residence.

The State argued during the trial that Uranga was not living at his registered Pilot Mound residence before he was evicted on November 18. Even assuming Uranga was living there until the November 18 eviction, the State contended that he did not comply with the sex offender registry requirements when he failed to register any information about the change in his principal residence with the Boone County Sheriff's Office until November 30. His Pilot Mound residency terminated on November 18, and he did not report that change within five business days on November 19, 22, 23, 24, and 29 (the Thanksgiving and Black Friday holidays made for a three-business-day week). His in-person report of the new address on November 30 was thus one day tardy.

Uranga's primary defense at trial was that the Pilot Mound address remained his principal residence until November 18, and it was the "change" to his new principal residence in Boone on November 19 that triggered the notification requirement. He therefore claims to have complied with chapter 692A because his in-person report on November 30 about his new residence was

the fifth business day after a notification-triggering event once holidays, weekends, and the first day upon a relevant change in information were excluded. *See id.* § 4.1(34) ("In computing time, the first day shall be excluded and the last included . . . ."). In other words, Uranga argued the relevant days for computing his time to register the change in residence within five business days were November 22, 23, 24, 29, and 30.

Uranga moved for judgment of acquittal at the close of the State's evidence and renewed his motion at the close of the defense's evidence, but both motions were denied. The court also rejected Uranga's request to change element four of the marshaling instruction, which stated that he was required to report "that he changed his location from his principal residence within five business days of the change," where "[t]he Trial Information and the language of 692A.105 used the phrase staying away from the principal residence for more than five days" instead. The jury found Uranga guilty after roughly thirteen minutes of deliberation. At sentencing, Uranga's term of incarceration was suspended, but he received a fine and five years of supervised probation. Uranga appealed, and we transferred the case to the court of appeals.

Uranga raised three arguments on appeal. First, he challenged the sufficiency of the evidence that he failed to report his new Boone residency in a timely manner on November 30. Second, he argued that the marshaling instruction—which said Uranga failed to register "that he changed his location from his principal residence within five business days of the change"—misstated the law under section 692A.105. Third, and most importantly for this opinion, Uranga made a second challenge to the sufficiency of the evidence by arguing that the State failed to prove that he triggered the requirement to register any information about temporary lodging away from his principal residence under

section 692A.105. Uranga claimed that he stayed at his principal residence in Pilot Mound until November 18, and then he stayed at his new principal residence in Boone starting November 19. Thus, Uranga said that section 692A.105's temporary lodging provision was not triggered because he was never away from his principal residence for more than five days.

The court of appeals affirmed Uranga's conviction in all respects. It first held that substantial evidence supported the jury's finding that Uranga did not timely report his change in location, so Uranga's first challenge to the sufficiency of the evidence failed. The court determined that the "change" that triggered a change-in-residency reporting obligation occurred on November 18 when Uranga was evicted from his Pilot Mound residence because chapter 692A defines "change" as "add, begin, *or terminate.*" *Id.* § 692A.101(5) (emphasis added). Thus, Uranga needed to register the change (i.e., the termination) of his residency in Pilot Mound with the Boone County Sheriff's Office within five business days of November 18, which imposed a November 29 deadline—one day before Uranga registered the new Boone address as his residence. The court of appeals also rejected Uranga's second sufficiency-of-the-evidence argument that he could not be convicted under section 692A.105 because he had no requisite "change" in temporary lodging. It likewise rejected Uranga's challenge to the jury instruction, concluding that "section 692A.105 . . . requires the sex offender to 'notify the sheriff' 'within five business days of a change' under section 692A.104" because "there is no difference between section 692A.105's use of 'change' and [section] 692A.104's use."

The court of appeals affirmed Uranga's conviction under section 692A.105. Uranga filed an application for further review, which we granted.

**II. Analysis.**

"We address [Uranga's] sufficiency of the evidence claim [first] because if successful, [he] would be entitled to a remand for entry of acquittal, and the remaining issue[] seeking a new trial would be moot." *State v. Dorsey*, 16 N.W.3d 32, 40 n.1 (Iowa 2025). A challenge to the sufficiency of the evidence is reviewed for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We are highly deferential to a jury verdict, but the verdict must be supported by substantial evidence to stand. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* In determining whether substantial evidence supports the jury's verdict, "we view the evidence in the light most favorable to the State" and make all legitimate inferences from the record in its favor. *Id.*

Uranga's second challenge to the sufficiency of the evidence frames the question presented as "[w]hether a registered sex offender can trigger the section 692A.105 requirement to notify [the county sheriff of] temporary lodgings while the offender is staying at the only residence that the offender has in this state." As explained more fully below, he is correct that the answer is no. A change in residence in itself does not trigger a registration requirement under section 692A.105, unless the registrant is away from his principal residence for more than five days.

In the State's own words at trial, it "charg[ed] Mr. Uranga with failing to notify the sheriff when he was not staying at his principal residence." The trial information charged Uranga under section 692A.105, which requires a registered sex offender to notify the county sheriff "of any location in which the offender is staying when away from the principal residence of the offender for more than five days." Iowa Code § 692A.105; *accord State v. Coleman*, 907

N.W.2d 124, 136–38 (Iowa 2018) (discussing the purpose of section 692A.105). And the relevant dates at trial were limited to on or about November 17–29, 2021. To secure a conviction under section 692A.105, the State needed to prove that Uranga stayed away from his principal residence for more than five days on or about November 17–29. It did not do so. It is true that Uranga's residence changed from Pilot Mound to Boone during that timeframe on November 18 or 19. But, as discussed below, the State presented no evidence that Uranga stayed away from his principal residence in Pilot Grove for more than five days before he was evicted on November 18 or that he stayed away from his principal residence in Boone for more than five days after moving there. The State therefore did not prove that Uranga needed to register any temporary lodging with the county sheriff pursuant to section 692A.105.

The marshaling instructions directed the jury to convict Uranga if he failed to register "that he changed his location from his principal residence within five business days of the change." Although a sufficiency-of-the-evidence challenge is preserved by the trial and verdict itself, *see Crawford*, 972 N.W.2d at 198, jury instructions become "the law of the case for purposes of reviewing the sufficiency of the evidence" when the defendant does not object to them at trial, *State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022). In this case, though, Uranga objected to the jury instruction and requested a different one. "Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions." *Eisenhauer ex rel. Conservatorship of T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 10 (Iowa 2019); *cf. Des Moines Civ. & Hum. Rts. Comm'n v. Knueven*, 988 N.W.2d 694, 701–02 (Iowa 2023) (discussing when jury instructions lack specificity such that they misstate the law and

mislead the jury to the defendant's detriment). A marshaling instruction does not need to quote a criminal statute verbatim, but "it must be a correct statement of the law." *State v. Cooley*, 21 N.W.3d 137, 143 (Iowa 2025) (quoting *State v. Schuler*, 774 N.W.2d 294, 298 (Iowa 2009)). The difference between the elements of a crime and the jury instructions can be stylistic but not substantive. *Schuler*, 774 N.W.2d at 298.

The jury instructions miscontextualized this court's decision in *State v. Coleman*, where we said: "In this case, the State's interpretation of Iowa Code section 692A.105, that requires a registered sex offender to make notification of his absence when he *changes his location from his principal residence*, reasonably construes the statute in a way that is consistent with the legislature's purpose and intent." 907 N.W.2d at 136 (emphasis added). But that quote discussed how to calculate the timing in which section 692A.105 applies—whether a sex offender has five days to register a temporary lodging from when he *begins* to stay away from his principal residence or five days from when he *terminates* the temporary lodging. *See id.* at 135–36; *see also* Iowa Code § 692A.101(5) (defining "change" as "add, begin, or terminate"). We held in *Coleman* that "change" is synonymous with "began" in that context. 907 N.W.2d at 135–36. A sex offender is "required to notify the sheriff within five business days of when he *began* to stay at a location away from his principal residence" under the temporary lodging provision in section 692A.105. *Id.* at 135 (emphasis added).

Over Uranga's objection, the jury instructions here misstated the law by using language from *Coleman* that described the timing requirements of section 692A.105 rather than the underlying conduct that triggers a registration requirement for temporary lodging away from the registrant's principal residence. Uranga objected to the instructions as given, asking the court to use

the phrase "staying away from the principal residence for more than five days" from section 692A.105 and the State's trial information. Because Uranga made a specific objection, *see Olson v. BNSF Ry.*, 999 N.W.2d 289, 294–95 (Iowa 2023) ("The objection must be sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury." (quoting *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 456 n.10 (Iowa 2016))); Iowa R. Crim. P. 2.19(4)(*g*) ("The rules relating to the instruction of juries in civil cases apply to criminal cases."), we measure the sufficiency of the evidence against the statutory text in section 692A.105 rather than the erroneous, objected-to marshaling instruction, *see Des Moines Civ. & Hum. Rts. Comm'n*, 988 N.W.2d at 705 (dismissing charge against defendant where "there was insufficient evidence to justify submitting th[e] case to the jury under the proper jury instruction" based on the text of the city ordinance that was requested by the defendant but rejected by the district court).

Section 692A.104 and section 692A.105 provide different sex offender registration requirements. A sex offender fails to comply with section 692A.104(2) if the offender fails to notify the county sheriff "within five business days of changing a residence." Iowa Code § 692A.104(2). "When the legislature has defined words in a statute—that is, when the legislature has opted to 'act as its own lexicographer'—those definitions bind us." *Coleman*, 907 N.W.2d at 135 (quoting *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014)). The legislature defined "residence" as it is used in chapter 692A to "mean[] each dwelling or other place where a sex offender resides, sleeps, or habitually lives, or will reside, sleep, or habitually live, including a shelter or group home." Iowa Code § 692A.101(24). The term "shall be construed to refer to the places where a sex offender resides,

sleeps, habitually lives, or is stationed with regularity, regardless of whether the offender declares or characterizes such place as the residence of the offender." *Id.* Thus, a sex offender may have more than one residence that needs to be registered with the local county sheriff, and a place may be an offender's "residence" even if it is not so registered. A sex offender who changes his residence—i.e., "add[s], begin[s], or terminate[s]" a place as his residence, *id.* § 692A.101(5)—triggers a registration requirement under section 692A.104(2) to notify the sheriff of that change. But the State did not charge Uranga with violating that provision.

Section 692A.105 sets out a different sex offender registry requirement. As the provision's title states, a sex offender must comply with these "[a]dditional registration requirements" for "temporary lodging." *Id.* § 692A.105. In full, section 692A.105 provides:

> In addition to the registration provisions specified in section 692A.104, a sex offender, within five business days of a change, shall also appear in person to notify the sheriff of the county of principal residence, of any location in which the offender is staying when away from the principal residence of the offender for more than five days, by identifying the location and the period of time the offender is staying in such location.

*Id.* We have acknowledged that "section 692A.105 is poorly written." *Coleman*, 907 N.W.2d at 137. Its text is ambiguous, for example, about how to determine what constitutes "within five business days of a change." *Id.* at 135. But its text is clear that the statute imposes a distinct registry requirement alongside—but separate from—the requirements contained in section 692A.104. The obligation to report information about temporary lodging comes "[i]n addition to the registration provisions specified in section 692A.104." Iowa Code § 692A.105. "We need not look any further than the plain language of the statute when the language is unambiguous." *Coleman*, 907 N.W.2d at 135.

Yet, the court of appeals held that "[s]ection 692A.105 concerns the same 'changes' contemplated by section 692A.104" by reading the opening clause to "expressly set[] forth that the sex offender must adhere to section 692A.104 to be in compliance with section 692A.105." It reasoned the statutes must be read together such that "Uranga's termination of residence triggered a change under section 692A.105 just as it would have under section 692A.104—temporary or permanent."

We believe the court of appeals overreads the import of that first clause referencing section 692A.104. The relevant "change" in section 692A.105 is when a sex offender begins to "stay[] . . . away from the *principal residence* of the offender" for "more than five days." Iowa Code § 692A.105 (emphasis added); *accord Coleman*, 907 N.W.2d at 135–36 (interpreting section 692A.105 to require a sex offender "to notify the sheriff within five business days of when he began to stay at a location away from his principal residence"). Importantly, section 692A.104 requires a sex offender to register every residence at which he "resides, sleeps, habitually lives, or is stationed with regularity." Iowa Code § 692A.101(24). But section 692A.105 is triggered only for temporary lodging of more than five days away from a registrant's "principal residence," even if the registrant has more than one registered residence. *Id.* § 692A.105. "Principal residence" is separately defined as "[t]he residence of the offender, if the offender has only one residence in this state," *id.* § 692A.101(20)(*a*), or as "[t]he residence at which the offender resides, sleeps, or habitually lives for more days per year than another residence in this state, if the offender has more than one residence in this state," *id.* § 692A.101(20)(*b*). Thus, sections 692A.104 and 692A.105 target different registration requirements. The court of appeals erred in holding that "[s]ection 692A.105 concerns the same 'changes' contemplated by section

692A.104." Section 692A.105 governs only temporary lodging of more than five days away from the offender's principal residence.

Here, the evidence presented at trial revealed that Uranga was evicted from his Pilot Grove residence on November 18. As far as the evidence presented at trial showed, that was his only residence at the time, so it was his principal residence. *See id.* § 692A.101(20)(*a*). Uranga testified that he then moved into a new residence in Boone on November 19 after he was legally evicted from Pilot Mound. No other evidence was presented at trial about the date on which the Boone address became his new residence. Although he did not register that residence until November 30, it still would have been deemed his "residence." *See id.* § 692A.101(24) (" *'Residence'* shall be construed to refer to the places where a sex offender resides, sleeps, habitually lives, or is stationed with regularity, regardless of whether the offender declares or characterizes such place as the residence of the offender."). And having only one residence, the Boone address was also his "principal residence" as of November 19. *See id.* § 692A.101(20)(*a*).

The State files a trial information as a formal accusation "to apprise the defendant of the crime charged so that the defendant may have the opportunity to prepare a defense." *State v. Grice,* 515 N.W.2d 20, 22 (Iowa 1994). The trial information also "inform[s] the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction." 42 C.J.S. *Indictments* § 16, at 465 (2017). "[A] formal accusation is essential for every trial of a crime. Without it the court acquires no jurisdiction to proceed, even with the consent of the parties." *State v. Meyers,* 129 N.W.2d 88, 91 (Iowa 1964).

"Failure of a trial information to charge an offense is akin to a lack of subject-matter jurisdiction." *State v. Adcock,* 426 N.W.2d 639, 640 (Iowa Ct. App.

1988); *accord State v. Trucke*, 410 N.W.2d 242, 243 n.1 (Iowa 1987) (en banc); 42 C.J.S. *Indictments* § 2, at 448 (2017) ("The indictment or information filed by the prosecution is the jurisdictional instrument upon which a defendant stands trial. In the absence of a formal accusation the court acquires no jurisdiction whatever, and if it assumes jurisdiction, a trial and conviction are a nullity." (footnotes omitted)). Accordingly, "if the offense of which [the defendant] is found guilty is neither charged nor an included offense, then he is found guilty of an offense without a formal charge and his conviction is a nullity." *Adcock*, 426 N.W.2d at 640. We cannot accept a conviction the State obtained by proving a separate crime the State could have but did not charge, effectively covering for the State's errors in filing the trial information or trying the case. *See id.* (citing *State v. Bartlett*, 164 N.W. 757, 758 (Iowa 1917)); *see also The Federalist No. 78*, at 402–03 (Alexander Hamiliton) (George W. Carey & James McClellan eds., Gideon ed. 2001) ("[T]hough individual oppression may now and then proceed from the courts of justice, the general liberty of the people can never be endangered from that quarter: I mean, so long as the judiciary remains truly distinct from both the legislature and the executive. . . . [L]iberty can have nothing to fear from the judiciary alone, but would have everything to fear from its union with either of the other departments . . . ." (footnote omitted)).

In sum, the State cannot charge Uranga with violating section 692A.105's temporary lodging provision but convict him for failing to timely register his change in residence from Pilot Mound to Boone. Failing to register a change in residence violates only section 692A.104, which the State did not charge. With respect to section 692A.105—which the State did charge—the only evidence presented at trial as to when Uranga began residing at his new principal residence in Boone came from Uranga, who testified that he moved to the Boone

address on November 19. At most, Uranga was temporarily away from his principal residence for a day or two—between November 17 and November 19. The State agreed to limit the relevant timeframe to the range of November 17 through 29, so evidence about Uranga's prior absences from the Pilot Grove address—which ceased being his principal residence when he was evicted on November 18—cannot support a five-day period during which Uranga was away from either his old "principal residence" in Pilot Grove or his new "principal residence" in Boone for more than five days. His conviction for violating section 692A.105 is not supported by the evidence and therefore cannot stand.

**III. Conclusion.**

For the reasons above, we reverse the court of appeals and remand the case to the district court to enter a judgment of acquittal.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**